**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:24-CV-81374**

**ROSENBERG/REINHART**

**D.J.,**

     *Plaintiff,*

*v.*

**FOREST TRAIL ACADEMY, LLC,
ATLANTIS LEADERSHIP ACADEMY,
LLC, RANDALL COOK, LISA COOK,
PAUL LUKE AND UNITED SECURE
YOUTH TRANSPORT AGENCY, LLC,**

     *Defendants.*

_____

**DEFENDANTS' UNITED SECURE  TRANSPORT AGENCY, LLC AND PAUL
LUKE MOTION TO DISMISS: COUNTS III, VI, VIII, IX, XII, XV,
XVIII, XXI, XXIII, AND XVI OF PLAINTIFF'S COMPLAINT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants United Secure Youth Transport Agency, LLC and Paul Luke (collectively "USYTA/The Transporter Defendants") moves to dismiss counts III, VI, VIII, IX, XII, XV, XVIII, XXI, XXIII, and XVI of Plaintiff D.J.'s Complaint and submits this memorandum of law.

## INTRODUCTION

In approximately November 2020, D.J. was a minor who was sent by his parents to attend a youth rehabilitation program, Atlantis Leadership Academy ("ALA"), located in Treasure Beach, Jamaica. (¶1-8). D.J. alleges that he was abused and mistreated in "cruel, inhumane, and despicable" ways while at ALA. (*Id.* at ¶3). In addition to ALA, Defendants in this action include ALA's owners, Randall Cook and Lisa Cook ("Mr. Cook" and "Ms. Cook"), Forest Trail Academy, LLC ("Forest Trail"), an educational program, USYTA, a transportation company, Paul Luke, agent of USYTA, (collectively "USYTA/The Transporter Defendants"). (*Id.*, ¶¶17, 19, 30, 36 and 38). At first glance, D.J.'s allegations of the abuse he incurred at ALA is shocking. However, D.J.'s entire lawsuit is a theory of conspiracy: that the Defendants acted in concert to engage in the "pervasive" and "systematic" abuse, assault, trafficking and neglect of minor children.

D.J.'s Complaint is 108-pages in length and consists of twenty-six (26) total claims against the Defendants. D.J. asserts ten claims against USYTA: (1) negligence; (2) negligent infliction of emotional distress ("NIED"); (3) vicarious liability; (4) fraudulent concealment; (5) fraudulent misrepresentation, (6) violation of the Trafficking Victim Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589(b) [in conjunction with § 1595]; (7) violation of TVPRA 18 U.S.C. § 2255; (8) conspiracy to commit fraudulent concealment; (9) conspiracy to commit fraudulent misrepresentation; and (10) civil conspiracy. In this Motion, USYTA seeks to dismiss all ten claims made against it for D.J.'s failure to state valid causes of action. Upon a close reading of these claims, it is clear that D.J. relies primarily on conclusory allegations as he pleads only a few vague facts which actually implicate USYTA.

D.J.'s allegations are deficient and call for context: USYTA is a specialized transportation company that assists in transporting high-risk individuals, such as

psychiatric patients and incarcerated individuals across the country. In some instances, USYTA is hired by a parent or guardian to transport a child to his designated rehabilitative program. It is for that reason that USYTA came to transport D.J. to ALA and has been sucked into this litigation. Without a scintilla of evidence, D.J. alleges that USYTA acted "in concert" with its Co-Defendants in manipulating his parents into sending D.J. to ALA as part of an allegedly conspiratorial, child labor trafficking scheme.

Further, D.J. accuses USYTA of facilitating child labor trafficking and emphasizes that USYTA knew or should have known that ALA was a child labor trafficking program. Without pleading any actual facts as to how or why USYTA would know that ALA was a labor tracker, D.J. is of the position that USYTA had an affirmative duty to prevent him from attending a program that his parents sent him to. Additionally, D.J. jointly accuses USYTA and its Co-Defendants of engaging in a child trafficking scheme. But, at its best, his theory of conspiracy rests entirely on the fact that USYTA and the Co-Defendants were paid for the services they provided (*which is an ordinary transaction in any course of business*) and frames these payments as financial profits from his alleged trafficking.

Moreover, as a matter of precedence, it is unreasonable to think that any transportation company should have a continued duty to a passenger once the passenger is no longer in the transporter's charge or be liable for harm incurred after the child is outside the transporter's control. To hold USYTA or any other transportation company to this standard would raise unprecedented issues of indefinite liability and interfere with individual liberty, free will and privacy in violation of the Constitution.

Undeniably none of the abuse or harm D.J. alleges occurred while D.J. was in USYTA's custody. For that matter, this is not a child labor trafficking case. Rather, this is a case of alleged child abuse, which all occurred after USYTA fulfilled its contract (and duties) by transporting D.J. to Jamaica.

As for negligence, D.J. only alleges arbitrary duties which are not founded in any statutory or common law nor are these duties contained in any contract.,.

Moreover, D.J.'s NIED claim fails as a matter of law as he does not plead that he witnessed an injury to a third person with whom he was close to. *LeGrande v. Emmanuel*, 889 So.2d 991, 995 (Fla. 3d DCA 2004) (citing *Zell v. Meek*, 665 So.2d 1048, 1052 (Fla. 1995)).

D.J.'s claim for vicarious liability also fails because he does not identify any torts committed by any actor of USYTA. Where claims for fraudulent concealment and misrepresentation require an intentional inducement, D.J.'s claims fail for a lack of standing. Moreover, D.J. fails to identify any intentionally inducing statements made by either USYTA or its agents, and the statements he does reference are constitutionally protected under the First Amendment. As to USYTA's involvement in a child labor trafficking scheme, D.J.'s allegations of abuse do not rise to a level of labor trafficking which is protected under the TVPRA. Finally, as all of D.J.'s claims fail, there is no foundational tort or wrong on which any of D.J.'s three conspiracy claims can survive.

## FACTUAL ALLEGATIONS[1]

The majority of D.J.'s claims against USYTA are rooted in alleged and unfounded partnerships, contracts, and agreements amongst Defendants. Although frequently repeated, the first allegations of these relationships are located at Paragraphs 42, 43, 44 and 45.

As will be described in more detail throughout this Motion, a majority of D.J.'s allegations are conclusory statements, which do not allege the existence of any material facts and which, more often than not, are merely a recitation of the essential elements of his claims. Concerning his allegations against USYTA specifically, the most substantial facts D.J. alleges can be found at Paragraphs 108 and 109:

> 90. The Transporter Defendants transported Plaintiff DJ from a separate youth please program in Utah, to Las Vegas and then to Jamaica in approximately November of 2020

---

[1] *Point of Clarification*: Due to space constraints, USYTA is selectively addressing Paragraphs in the Complaint because of their implications for the purpose of this Motion. Paragraphs not referenced or addressed throughout this Motion should *not* be misinterpreted as USYTA's agreement with their contents or relevancy.

91. During the time Defendant USYTA transported Plaintiff D.J. to Jamaica, they represented to Plaintiff D.J. that: they were familiar with ALA; that they had taken children to ALA before; that it was safe, secure, therapeutic, and educational environment where all of his needs would be met; that they personally knew Randall Cook; and that Randall Cook was a great man who would take care of Plaintiff D.J.

The one material fact which D.J. omits in his Complaint is the existence of a contract between D.J.'s parents and USYTA for D.J.'s transportation to ALA. (*See the redacted contract attached hereto as "Exhibit 1"*)(hereinafter, referred to as "Travel Contract").[2] This contract is integral to the allegations against USYTA because it defines USYTA's scope of work (and duty) in relation to the material issues and describes USYTA's "termination of duties" which limits its liability. Ultimately, this extrinsic document provides essential context concerning a substantial portion of D.J.'s allegations against USYTA.

Throughout the Complaint, D.J. makes numerous grouped allegations against Defendants, but specifically, that "at all material times" all Defendants had a continued duty or responsibility for the well-being of D.J. As previously stated, and as evidenced by the Travel Contract, USYTA's only role was to transport D.J. to Jamaica, and D.J. fails to allege any manner in which he remained in the care, control, custody, and guardianship of USYTA after that transportation was completed. In other words, there are no facts plead to show that USYTA was responsible for D.J.'s well-being "at all material times."

---

[2] Exhibit 1 is a copy of the contract between USYTA and R.J. as described in the body of the Motion. Pursuant to Federal Law, extrinsic documents that "form the backbone" of the plaintiff's allegations and are integral to the complaint may be properly incorporated into a Rule 12(b)(6) motion to dismiss. *Cohen v. Cap. One Funding, LLC*, 489 F. Supp. 3d 33, 45 (E.D.N.Y. 2020)(where allegations were derived from the existence of extrinsic documents, and those documents formed the bases of the parties' contractual relationships, roles, and potential liabilities, the court reasoned that the facts that could be drawn from those extrinsic warranted consideration in order to prevent the "plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.")(*Id.*)(citations and internal quotations omitted).

Finally, in regard to D.J.'s reference(s) to 18 U.S.C. § 1169 in Paragraph 80, which creates an obligation to report the suspected abuse or neglect of minor children, D.J. fails to show how USYTA violated the statute because he fails to allege any facts which demonstrate that USYTA knew or should of known that ALA was allegedly unsafe, either actually or constructively. Where D.J. periodically alleges that USYTA knew or should have known that ALA was allegedly engaging in the abuse and labor trafficking of minors, D.J. never once describes how or why USYTA knew or should have known this information.

## LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a "plaintiff must plead more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Eleventh Circuit has instructed, courts first "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

Having done so, the court is then to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" Id. (quoting *Iqbal*, 556 U.S. at 679). That is, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Neither "bald assertions" nor "unwarranted deductions of fact" are sufficient to overcome a motion to dismiss. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

## ARGUMENT

## I.    D.J. FAILS TO STATE ANY CLAIMS FOR FRAUD
### (Counts XII, XVIII)

D.J.'s claims for fraudulent concealment and misrepresentation are largely based on alleged misrepresentations made by USYTA to his parents, which D.J. contends induced his ultimate attendance at ALA.

Generally, when fraud is asserted as a claim, the circumstances constituting fraud or mistake shall be stated with such particularity. Fla. R. Civ. P. 1.120(b). In addition to stating all essential elements of fraud, "[w]hen fraud in the inducement is alleged" the complaint must allege "reasonable reliance on <u>material representations</u> of <u>existing fact</u>." *Peninsular Fla. Dist. Council of Assemblies of God v. Pan Am. Inv. & Dev. Corp.*, 450 So. 2d 1231, 1232 (Fla. Dist. Ct. App. 1984)(citation omitted; emphasis added).

## I.     First Amendment Free Speech.

USYTA contends that the alleged statements, assuming they were true for the purposes of this Motion, were opinions and thus constitutionally protected free speech under the First Amendment of the United States Constitution. Statements of pure opinion are not actionable under the First Amendment. *Morse v. Ripken,* 707 So.2d 921, 922 (Fla. 4th DCA 1998). "[A] mere statement of opinion, belief, or expectation, although untrue and resting upon no information, is not such a false representation as to constitute fraud." *Glass v. Craig,* 83 Fla. 408, 91 So. 332, 335 (1922)(emphasis added).[3]

At Paragraph 101, D.J. alleges that USYTA, through its agents and employees, represented that "ALA was a safe, secure, educational, accredited, therapeutic environment… that then-minor D.J. would not be harmed… that it was not only familiar with ALA but… helped transport other children to ALA in the past." D.J. also alleges while being transported to ALA, USYTA, through its agents and employees, represented to him that:

> …they were familiar with ALA; that they had taken children to ALA before; that it was safe, secure, therapeutic, and educational environment where all of his needs would be met; that they personally

---

[3] See, *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. Dist. Ct. App. 1995)(a seller's statements that the building was "a very good building" and "an excellent deal" were clearly statements of opinion and no fraudulent misrepresentations); *Reimsnyder v. Southtrust Bank, N.A.*, 846 So. 2d 1264, 1265-70 (Fla. Dist. Ct. App. 2003)(a bank that referenced a third party to one of its customers and made "gratuitously supplied" statements that "that its customer was a reputable company" made no fraudulent misrepresentations of material facts).

> knew Randall Cook; and that Randall Cook was a great man who would
> take care of Plaintiff D.J.

*Id.* at¶ 91.

Of these allegations, the only allegation that is not an opinion is that USYTA took children to ALA before. However, D.J. does not assert that statement was false. In fact, the entire basis of LS. The rest of the statements  are opinions about ALA, which are *not* material facts about the program. Any statements made about ALA being a safe, secure, therapeutic, and educational environment are subjective opinions because reasonable minds could differ, and under the First Amendment, USYTA is free to share its opinions, good, bad or indifferent.

For example, where one parent may have the opinion it is safe for her child to ride a bicycle with a helmet and sneakers, another parent might disagree and have the opinion that it is perfectly okay for their child to ride in sandals with no helmet. One person's idea of security might just mean locking the doors, but another person's idea of security might be barbed wire and surveillance cameras. Where one person thinks it is therapeutic to paint, another person who hates painting may disagree. Even statements about whether a program is educational is an opinion because while some believe education is purely academic, others believe in the more pragmatic "school of hard knocks," or education from life experiences. The same is even true regarding opinions about people, like Randall Cook. Hotly debated, some may argue that President Donald Trump is the greatest president in all of American history, while others will passionately disagree.

As to his allegation that USYTA misrepresented ALA's accreditation status, D.J. has not clearly plead whether ALA was accredited or unaccredited. But, D.J. subsequently alleges that "said accredited educational services were not being provided" at ALA. (Doc. #1: ¶ 87). Whether or not accredited education was being provided to the children at ALA is completely different than whether ALA was accredited. One can be accredited, and at the same time, not adhere to the best practices of that association. As such, D.J. fails to plead that USYTA made a false statement of material fact that ALA was accredited when in fact there are no

allegations it was not accredited.

Moreover, "accreditation" has multiple definitions which describe some type of authorization, approval, or recognition in conformance with a standard.[4] Because there is more than one definition for accreditation, and where accreditation may be given by different authorities, such as the U.S. Department of Education or the Florida Department of Education, accreditation is also a matter of opinion. Therefore, any statements of ALA's accreditation are subjective opinions on which reasonable minds could differ, and these opinions are also protected under the First Amendment.

Accordingly, D.J. fails to allege that USYTA negligently or fraudulently misrepresented that ALA was accredited. In fact, in Paragraph ¶102 of D.J.'s Complaint, he concedes that ALA was accredited, which is exactly what LS claims USYTA stated. ("Defendant Forest Trail was providing accreditation services to ALA") (Doc #1: at ¶102).

### c. Fraudulent Concealment.

A valid cause of action for fraudulent concealment requires a plaintiff to plead five essential elements: (1) the defendant concealed *or* failed to disclose a material fact; (2) the defendant knew *or* should have known the material fact should be disclosed; (3) the defendant knew its concealment of *or* failure to disclose the material fact would induce the plaintiff to act; (4) the defendant had a duty to disclose; and (5) the plaintiff detrimentally relied on the concealed information. *Philip Morris USA Inc. v. Principe*, 337 So. 3d 821, 827 (Fla. Dist. Ct. App. 2021)(citation and quotations omitted; emphasis added).

A majority of D.J.'s allegations in support of his fraudulent concealment claim are immaterial, while some of his allegations simply fall short. For example, D.J. lists eleven undistinguished things that USYTA allegedly had knowledge of, but this Court would have to *assume* that things were intended to be alleged as "material facts" that USYTA had knowledge of because D.J. fails to specifically allege them as such. (Doc #1: at ¶260). D.J. even fails to allege that his parents detrimentally relied

---

[4] https://www.merriam-webster.com/dictionary/accredit

on the concealed information, alleging that they only "justifiable relied" on it. [5] *Id.* at ¶270).

Ultimately, D.J. fails to plead all of the essential elements to state a valid cause of action for fraudulent concealment, including (1) pleading specific fact(s) that USYTA allegedly concealed or failed to disclose were *material*; (2) how or why USYTA knew or should have known that the material fact(s) *should* be disclosed or what "superior knowledge" USYTA had; (3) that USYTA had a duty to disclose such material facts; and (4) that D.J. and/or his parents detrimentally relied on the concealed information. Because D.J. failed to plead any facts supporting the essential elements of a claim for fraudulent concealment, he fails to state a cause of action against USYTA.

**d. Fraudulent Misrepresentation.**

In comparison, a valid cause of action for fraudulent misrepresentation requires that a plaintiff plead: (1) the defendant made a false statement of material fact; (2) the defendant knew or should have known the representation was false; (3) the false representation was made with the intent that it would induce the plaintiff to act; and (4) the plaintiff suffered resulting damages in reliance upon the representation. *Philip Morris USA Inc.* at 827. (citation omitted). Making a false statement, knowingly or not, does not constitute fraud; a false statement is fraudulent when the declarant intends to induce reliance. *Id.* at 829. To sufficiently allege a claim for false misrepresentations, "ultimate material facts, not opinions or promises, directly affecting the transaction, should be clearly and distinctly stated showing the specific representations made and relied on, the falsity of the representations, and the resulting injury to the complaining party." *Riverside Inv. Co. v. Gibson*, 67 Fla. 130, 132, 64 So. 439, 440 (1914).

---

[5] See *Bankers Tr. Co. v. Basciano*, 960 So. 2d 773, 778 (Fla. Dist. Ct. App. 2007)(citations and quotations omitted)(to state a valid cause of action for misrepresentation, one must have a right to rely; one is not "justified" in relying to his detriment on another's unenforceable promise or representation when that party was not required to perform). *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)(justifiable reliance is not an element of fraudulent misrepresentation).

Count XVIII of the Complaint, Paragraphs 377 – 398, constitutes D.J.'s claim for fraudulent misrepresentation against USYTA. A majority of the allegations contained within this claim are also immaterial. To begin,  D.J. lists ten different things which he alleges USYTA misrepresented its knowledge of, but, once again, this Court would have to *assume* that things were intended to be alleged as "material facts" that USYTA had knowledge of because D.J. fails to specifically allege them as such. (¶378).

In this count, D.J. does attempt to allege sixteen different "material representations" made by USYTA, but eight of those allegations cite directly to D.J.'s exhibits "B," "E," and "A" in footnotes, which are copies of pages from ALA's and Forest Trail's websites. (¶381). In other words, half of the "material misrepresentations" D.J. references are not representations made by USYTA, but by Co-Defendants. The remaining eight allegations of USYTA's "material misrepresentations" are again subjective statements of opinion, such as that ALA was a safe place to send children, that  ALA would protect children, that ALA would provide educational resources for children, and that ALA would not hurt children, not objective material facts. Therefore, these statements are both protected by the First Amendment and insufficient to support a false misrepresentation claim.

Ultimately, D.J.'s claim fails to plead all of the essential elements of fraudulent misrepresentation, including (1) that USYTA made a false statement of material fact or (2) how or why USYTA knew or should have known that the representation was false. Because D.J. failed to plead all of the essential elements, he has failed to state a valid cause of action for fraudulent misrepresentation against USYTA.

## II.   D.J. FAILS TO STATE ANY CLAIMS FOR CONSPIRACY

(Counts IX, XV, XXI)

### a.  D.J. fails to plead that USYTA was engaged in business with any Co-Defendants.

Throughout the Complaint, D.J. alleges that USYTA was engaged with ALA and Forest Trail through contractual, partnership, and business venture relationships. (Doc. #1: ¶42-¶45). However, for the reasons set forth below, D.J. fails

to adequately allege the existence of any of these relationships, which are essential to his conspiracy claims.

### i. Contracts

To allege the existence of a contract, "a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient speculation of the essential terms. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). An "essential term" is one that concerns "significant issues such as subject matter, price, payment, quantity, quality, duration, or the work to be done." *United States Doe v. Health First, Inc.*, 2017 WL 1929700, at *4 (M.D. Fla. 2017) (quoting *Material Term*, BLACK'S LAW DICTIONARY (9th ed. 2009)). Whether the contract is written or implied, each essential element must be alleged, and when the contract is implied, the burden is especially high:

> [W]hile… contracts may be expressed or *implied*, the use of the word 'implied' does not relieve one who alleges the existence of such a relationship of the burden of… alleging… that an agreement or contract supports the relationship as well as every element necessary to be embraced within the concept of a contract. Moreover, where… the events and transactions which form the basis of the alleged relationship are not in writing, the burden of establishing the existence of such contract, including all of its essential elements, is indeed, as it should be, a heavy and difficult one. Business relationships are not customarily entered into in a casual manner.

*Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957)(emphasis added).

In the Complaint, D.J. alleges that USYTA entered into a contract with ALA to "provide youth transportation services to children enrolled at ALA." But, this allegation is conclusory because D.J. fails to allege the existence of any offer, acceptance, consideration, or essential terms which demonstrates the existence of a contract with ALA, either written or implied.

### ii. Partnerships and Joint Ventures.

Partnerships and joint ventures are separate legal relationships, but they are both governed by partnership law. *Id.* at 514. Florida Statute § 620.8202(1) defines a partnership to be an association of two or more people who operate a "for profit"

business as co-owners, regardless of their intention to form a partnership. Partnerships relate to "a general and continuing business of a particular kind, although there may be a partnership for a single transaction." *Kislak*, 95 So. 2d at 515. (citation and quotations omitted). By contrast, joint ventures are generally single transactions, although they may also be a business that continues over a period of time. *Id.* (citation and quotations omitted).

Unlike partnerships, joint ventures additionally require (1) that the relationship arises out of a contract, for which consideration "may be a promise, express or implied, to contribute capital or labor"; (2) some agreement that both profits and losses will be shared; and (3) that two or more people "combine their property or time or a combination thereof in conducting some particular line of trade or for some particular business deal." *Id.* Finally:

> In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained.

*Id.* (citation and quotations omitted; emphasis added). "The absence of one of the elements precludes a finding of a joint venture." *Jackson–Shaw Co.,* 8 So.3d at 1089 (citation omitted). When a plaintiff fails to allege *each* of these essential elements in the complaint, the allegations are insufficient to allege the existence of a joint venture. See generally, *Kislak*, 95 So. 2d 510.

At Paragraphs 30 and 42, D.J. alleges that USYTA engaged in individual partnerships with ALA and with Forest Trail, but nowhere in the Complaint does D.J. allege that USYTA jointly operated any "for profit" businesses as a co-owner with either Co-Defendant. Therefore, these allegations are baseless and conclusory labels which fail short of sufficiently alleging the existence of these partnerships.

At Paragraph 49, D.J. alleges that USYTA "operated, conducted, engaged in, and carried out a business and a business venture… partnering with ALA and Defendant Forest Trail." Thereafter, D.J. continues to reallege USYTA's participation

in a venture with Co-Defendants. Although D.J. frames his allegations of a supposed "venture" in many different ways, at no point does he allege that (1) the venture arose out of either an express or implied contract, (2) that there is an agreement about sharing profits and losses, or (3) that USYTA combined either its property or time with the Co-Defendants' property or time. D.J. also fails to allege any of the five additional essential elements which are required in joint venture contracts. Because D.J. fails to allege any of the essential elements of a joint venture, D.J. fails to sufficiently allege the existence of a venture which involved USYTA.

In sum, although D.J. alleges that USYTA engaged in several contractual, partnership and business venture relationships with Co-Defendants, at no point does D.J. plead sufficient facts which demonstrate the existence of any of these relationships beyond his conclusory labels.

### b. Civil Conspiracy.

A claim for civil conspiracy "is not the conspiracy itself, but the underlying civil wrong." *Tejera v. Lincoln Lending Servs.*, 271 So. 3d 97, 103 (Fla. Dist. Ct. App. 2019) (citing *Marriott Int'l Inc. v. Am. Bridge Bahamas, Ltd.*, 193 Sp.3d 902, 909 (Fla. Dist. Ct. App. 2015)). Therefore, a claim for civil conspiracy requires an "actionable underlying tort or wrong." *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997) (citation omitted).

Additionally, to allege a valid cause of action for civil conspiracy, a plaintiff must allege that there was (1) an agreement between two or more parties; (2) an intent to commit an unlawful act or to do a lawful act by unlawful means; (3) engaging in some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship*, 9931 So.2d 137, 140 (Fla. Dist. Ct. App. 2006).

Paragraphs 198 – 217 constitute D.J.'s claim for civil conspiracy. To begin, at Paragraph 197, D.J. alleges that Defendants "formed an association to carry out a singly business enterprise, for profit, to combine their property, money, efforts, skill, employees, resources, and knowledge," or resources. While these allegations appear to allege one of the business relationships described previously, as discussed, D.J.

failed to sufficiently plead the existence of any of relationships with any Co-Defendants, and D.J. fails to allege *what* resources were supposedly combined, *which* Defendant provided *which* resources, or *how* these resources were combined. D.J. also alleges that the Defendants are all "liable for the acts of each other, irrespective of whether each committed the torts alleged herein," but D.J. fails to allege a reasonable basis as to how or why USYTA should be held liable for the Co-Defendant's torts or wrongdoing.

Although at Paragraph 203 D.J. alleges that the Jamaican authorities investigated Defendants, this allegation is not helpful in supporting his civil conspiracy claim because without more, this allegation fails to demonstrate the existence of any material fact. At its best, it is a reference to an irrelevant suspicion and speculative opinion, which is not material fact.

In alleging how USYTA was specifically involved in this supposed conspiracy, at Paragraph 210, D.J. reiterates the fraudulent misrepresentations and concealments discussed above. To those allegations, USYTA refers to its previous discussion and reasserts the same responses. D.J. then alleges that USYTA "arranged for and carried out the transportation of L.S" and that USYTA was motivated to protect its own interests and benefitted financially from its association with the other Defendants. Taking these allegations as true, the actions and interests alleged are not illegal or indicative of any wrongdoing. They merely allege USYTA's engagement in ordinary travel and business operations.

To that extent, USYTA once more responds that these conclusory allegations lack any specific allegations of fact which give rise to a valid cause of action.

### c. Conspiracy to commit fraudulent concealment and conspiracy to commit fraudulent misrepresentation.

Causes of action for conspiracy to commit fraudulent concealment and fraudulent misrepresentation require, at minimum, the same elements as causes of action for fraudulent concealment and misrepresentation with additional elements of a conspiracy existing between the parties. See generally, *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006); *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831,

835 (Fla. 2022). (citation omitted). As to avoid redundancy, USYTA refers to its previous discussions regarding fraud and civil conspiracy in response to D.J.'s claims for fraudulent concealment and misrepresentation, USYTA reasserts the same responses. Whereas D.J. has failed to state a valid cause of action for fraudulent concealment or fraudulent misrepresentation, D.J. also fails to allege a valid cause of action for conspiracy to commit fraudulent concealment or conspiracy to commit fraudulent misrepresentation.

### III.  D.J. FAILS TO STATE A CLAIM FOR CHILD LABOR TRAFFICKING
(Counts XXIII, XXVI)

D.J. claims to be a victim of child labor trafficking under § 1589(b), alleging that all of the Defendants knowingly participated and benefitted from participation in the joint venture described throughout the Complaint. Just as with his other claims, D.J. fails to sufficiently allege substantive facts, instead pleading conclusory allegations posed as facts along with recitations of the essential elements.

**a. Forced labor v. child abuse.**

"[T]he fundamental purpose of § 1589 is to reach cases of servitude achieved through nonviolent coercion—namely serious harm, the threat of serious harm, or the abuse or threatened abuse of legal process." *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017)(citation omitted). In 2008, Congress passed § 1589 with the intention of reaching "cases in which persons are held in a condition of servitude through nonviolent coercion." *United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011). The *Dann*'s court's legislative intent analysis described:

> [S]omeone is guilty of forced labor if he [] intends to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm—physical or nonphysical, including psychological, financial, reputation harm—that would compel someone in her circumstances to continue working to avoid that harm….

*Id.* at 1169-70. (citations omitted; emphasis added) In *Dann*, there is a strong emphasis on § 1589 being applicable to cases involving employer-employee

relationships. *Id.*, generally.

Child abuse and forced labor are two distinct offenses, and while they share some similar characteristics, the courts approach these types of cases with particular caution:

> Child abuse is a state crime, but not a federal crime. Forced labor is a federal crime, 18 U.S.C. § 1589, but the statute obviously does not extend… Only by bootstrapping can this combination of two actions that are not federal crimes—child abuse and requiring children [] to do household chores—be read as a federal crime.

*United States v. Toviave*, 761 F.3d 623-24 (6th Cir. 2014).[6] When tortiously abusive behavior may rise to the level of trafficking under the TVPRA, an essential element, the victim's ability to leave at will, must be considered on a case by case basis.[7]

As a preliminary matter, USYTA contends that D.J.'s allegations do not create a cause of action for labor trafficking under § 1589. Instead, D.J.'s allegations are acts of child abuse. According to legislative intent and demonstrative case law, § 1589 is intended to protect *employees* against an *employer's* abuse, which is used to prevent the victim employee bound from leaving and which compels the victim to stay. In D.J.'s circumstances, he was not an employee, but a minor, whose parents voluntarily enrolled him at ALA. Though D.J. alleges that staff forced him to engage in manual

---

[6] See generally, *Toviave*, 761 F.3d 623; *United States v. Campbell*, 770 F.3d 556 (7th Cir. 2014); *United States v. Paz-Rodriguez*, No. 20-CR-82-JED, 2020 WL 5607821 (N.D. Okla. Sept. 18, 2020); *United States v. Kelly*, 609 F. Supp. 3d 85 (E.D.N.Y. 2022). See also, *United States v. Callahan*, 801 F.3d 606, 619 (6th Cir. 2015)(the abuse or force used against labor victims is "used to prevent the victims from leaving and to keep them bound to their captors.").

[7] See *Muchira v. Al-Rawaf*, 850 F.3d 605, 620, 618 (4th Cir. 2017), <u>as amended</u> (Mar. 3, 2017)(the harm or threat of harm alleged must be "considered from the vantage point of a reasonable person in the place of the victim, [which] must be 'sufficiently serious to *compel* that person to *remain*" in her condition of servitude when she otherwise would have left)(citations omitted)(emphasis added). See also, *Paguirigan*, 286 F. Supp. 3d at 438. ("in considering whether the employer intends the victim to believe she cannot leave, we must 'consider the particular vulnerabilities of a person in the victim's position,' though the victim's acquiescence must be *objectively reasonable* under the circumstances.").

labor like "landscaping and cleaning," by force and without receiving any compensation, D.J. was not the type of "victim" which § 1589 sets out to protect.

Where the threat of harm alleged must be considered from the point of view of a reasonable person in D.J.'s place, the decision for D.J. to leave ALA was his parents'. Thus, D.J. never had free will to leave the program at his own volition. With that in mind, ALA's alleged abuse was irrelevant in stopping D.J. from leaving or compelling him to stay there. This is a case, which concerns a 15-year-old who was sent by his parents to attend a program outside the country, who did not travel there alone nor under his own volition, and was under the legal guardianship of his alleged abuser. As such, this fact pattern demonstrates a case of child abuse after the child was sent to the program, not federal trafficking, especially when the allegations concern abuse which took place at the program. The fact is that  § 1589 was created to eliminate acts of forced labor in which the perpetrator profits off the actual work performed by the victim. D.J. does not plead one fact that any of his labor was being sold to a third party in order for any of the Defendants to profit. Indeed, while D.J. claims that he performed work at alleged vacation homes, he does not plead any facts that any of the Defendants were paid for that work. To the extent that D.J.'s claim under § 1589 fails to allege a valid cause of action for the forgoing reasons, USYTA leaves the consideration of this issue to the Court and proceeds to address the sufficiency of D.J.'s allegations under § 1589.

### b.  Valid cause of action under the TVPRA, 18 U.S.C. § 1589(b).

To state a valid cause of action under 18 U.S.C. § 1589(b), the plaintiff must allege that the defendant (1) knowingly benefitted financially or by receiving anything of value; (2) participated in a venture; and (3) which the defendant knew or should have known has engaged in an act in violation of Chapter 18. Each defendant's specific conduct and knowledge must be alleged *separately*:

> A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant. Without details as to who did what… [one] cannot determine whether the allegations are sufficient to state a

TVPRA claim against each defendant.

See *Bucco v. W. Iowa Tech Cmty. Coll.*, 555 F. Supp. 3d 628, 642 (N.D. Iowa 2021)(citations, parentheses, and quotations omitted; emphasis added).[8] Conclusory allegations that do not supply facts, such as dates or specific acts, are inadequate to show that a plaintiff has a "plausible entitlement to relief" under the TVPRA. *Brooks v. Gilman*, 527 F. Supp. 3d 117, 120 (D. Mass. 2021).

Those who are not the alleged trafficker, but who knowingly benefited from participation in a venture, can also be held liable under § 1595(a) under a theory of third-party "beneficiary liability." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021). In order to sufficiently allege the existence of a "venture" under § 1595, a plaintiff must allege that the defendant had a continuous business relationship with the trafficker, which can be demonstrated by a pattern of conduct or tacit agreement. See, *T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 795 (S.D. Ohio 2024)(citations omitted); *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 784 (C.D. Cal. 2024)(citations omitted).

To sufficiently allege that a defendant observed trafficking, knew or should have known that the "venture" violated the TVPRA, or otherwise participated under a theory of beneficiary liability, the plaintiff must at least allege the defendant's had actual knowledge, constructive knowledge based on the totality of the circumstances, or a reckless disregard of the means by which the venture obtained labor.[9]

---

[8] "[A]lthough conditions of a person's mind may be alleged generally, the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Bucco v.* 555 F. Supp. 3d at 642 (citations and quotations omitted).

[9] See generally, *Id.* See *Bucco*, 555 F. Supp at 641. See also, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019)(finding that, based on the totality of the circumstances, the defendant franchisee hotel had sufficient constructive knowledge of the trafficking to be liable as a venturer when, among other things, the trafficker asked for rooms near exits, the trash cans outside the rooms contained an extraordinary number of used condoms, rooms were frequently paid for in cash, the plaintiff's physical appearance noticeably deteriorated, and despite her screams for help as the result of physical abuse, the hotel staff ignored her).

D.J. asserts three claims under the TVPRA. The primary TVPRA claim under § 1589(b) is alleged as Count XXIII of the Complaint, located at Paragraphs 598 – 642. To begin, all of the allegations contained within these Paragraphs group, or "lump," USYTA together with Co-Defendants, and none of the allegations allege USYTA's specific or individual behavior. Therefore, all of D.J.'s allegations are insufficient to state a valid claim under *Bucco*.

Nevertheless, although D.J. alleges that generally that the Defendants, as a group, knowingly benefited financially, received something of value, and were each paid a financial benefit or received a financial gain by way of a kick back or bonus, none of these allegations are specific to USYTA or supply facts to support such claims. (Doc. #1: ¶476-478). These allegations are merely a recitation of the elements which fail to allege substantiating facts such as the type of "value" received, how much that value was, who provided it, or how frequently this value was incurred. While it may be true that USYTA made a profit by charging D.J.'s parents a fee for its transportation services, this is a normal, transactional operation in the ordinary course of business, which alone is not indicative of value obtained in the furtherance of prohibited trafficking under Chapter 18.

Although D.J. conclusively states that Defendants, as a group, engaged in a venture, D.J. fails to sufficiently plead the existence of a venture under § 1595 because he fails to allege any patterns of conduct or tacit agreements which existed specifically between USYTA and any Co-Defendants. D.J.'s allegations of a venture are a recitation of the elements with no allegation of fact.

Finally, D.J. alleges that the Defendants jointly "knew or were in reckless disregard" that Mr. Cook, Ms. Cook, and ALA engaged in a pattern and practice to use "Defendants' resources to entice or  recruit minor boys into forced labor and involuntary servitude." (Doc. #1: ¶ 475). This allegation, among other similar ones in support of this claim, again recites an essential element as a fact, but fails to specifically allege how USYTA had knowledge, what USYTA had knowledge of, or in what way USYTA acted in a reckless disregard.

In sum, D.J. fails to sufficiently plead any and all of the essential elements of a claim for beneficiary liability under § 1589(b) in regard to USYTA and Count XXIII must be dismissed.

### c. 18 U.S.C. § 1595 and § 2255.

Broadly, Chapter 18 encompasses federal criminal code. § 1595 allows individuals who are victims under the chapter to seek civil remedy for criminal actions, creating a private cause of action for certain crimes. Similarly, § 2255 provides for the civil remedy of personal injuries sustained under certain enumerated statutes in Chapter 18, including § 1589 specifically.

Where claims under § 1595 and § 2255 are predicated on the validity of a victim's claim, neither of these statutes state valid causes of action if they lack a requisite criminal statute giving rise to a victim's underlying claim under Chapter 18. In the case at bar, LS's claim under § 1595 and § 2255 in Count XXIII are contingent on having a valid claim under § 1589(b). In other words, in order for these claims to survive, not only does D.J. have to victim under § 1589(b), but he must also properly plead that USYTA was the perpetrator of the alleged trafficking.

As such, D.J. fails to state a valid cause of action under 18 U.S.C. § 1589(b), § 1595, and § 2255, and Counts XXIII and XXVI of the Complaint must be dismissed.

## IV.    D.J. FAILS TO STATE ANY CLAIMS FOR NEGLIGENCE

(Counts III, VI, VIII)

### a.  D.J. Fails To State A Claim For Negligence Because L.S Fails To Identify Any Requisite Duties.

A defendant's duty may arise from four general sources: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case. *Id.* (citation omitted). When one "undertakes" to provide a service pursuant to a contract, that individual "assumes a duty to act carefully and to not put others at an undue risk of harm," including third-parties. *Id.* at 1186. (citation omitted).

In his negligence claim, D.J. purports that USYTA owed a "duty to act and use

reasonable care to ensure the safety and protect the health and welfare of minor D.J.," even after USYTA relinquished care, custody and control of him. (Doc. #1: ¶ 138). However, such a duty is unfounded in statute, judicial precedent, under the common law or contract. As in *Clay*, which involved a contractual relationship between two parties that benefitted a third-party, USYTA undertook a specific and limited duty to safely transport D.J. to Jamaica and place him into the custody of ALA pursuant to the arrangements made by D.J.'s parents. The terms of agreement evidences the intention that USYTA's duty was terminated "…at the time that Minor Child is delivered to program/facility…." See *Exhibit* 1.[10] Though at Paragraph 136 D.J. alleges that USYTA owed a duty to act *in loco parentis* at "all material times," USYTA emphasizes that, as evidenced by this contract, USYTA only had such a duty while it was transporting D.J. and such duty ceased to exist once D.J. was transferred to the custody of ALA and was no longer in its care, custody, or control.

Pursuant to the duty he describes, D.J. proceeds to list out twenty-nine (29) different breaches in his negligence claim at Paragraph 139. However, because it would take an inordinate amount of space to address each of these alleged duties individually, USYTA responds generally:

(1) To the extent that D.J. contends that these breaches arise under a duty, any such duties alleged by D.J. are arbitrary, not rooted in law or contract, and cannot form the basis of a valid cause of action for negligence.

----

[10] When a written contract lack's a party's signature, the court may consider other facts in determining the validity of the contract, such as facts and circumstances that establish mutuality or assent, performance under the contract, or a party's words or conduct. *Morali v. Mayan*, 377 So. 3d 1182, 1184-85 (Fla. Dist. Ct. App. 2024)(citations omitted). Considering the *Morali* factors, although the contract in USYTA's possession is unsigned, its validity can still be easily surmised by the sum of the circumstances: A.C.'s parents intended for L.S. to be transported by USYTA to Jamaica for the purpose of attending ALA, USYTA actually transported L.S. to Jamaica, a fact which he agrees to in his own allegations as described above, and USYTA's duties ended once L.S. was in the custody of ALA. That being said, USYTA agrees to all duties imposed under the contract and by law as it pertains to the transportation of L.S. to Jamaica and the time in which L.S. was in USYTA's custody.

(2) A majority of these allegations are, at best, a hodgepodge of unfounded idealisms, claims of negligent misrepresentation, and allegations of other Defendants' actions.

(3) These allegations are improper conclusions, posed as facts, but neglect to allege any facts with any particularity.

Some allegations are so baseless that they warrant specific responses. To begin, D.J. contends that USYTA breached its duty under 18 U.S.C. § 1169, but this statute does not apply to USYTA or these circumstances whatsoever. (Doc. #1: ¶ 139, j). § 1169 imposes an affirmative duty on certain enumerated individuals, such as physicians, teachers, counselors, or law enforcement officers, who know or have reasonable suspicion to know, that a child was abused **in Indian country** or that that such abuse may occur, to report that information to local child protective services or law enforcement. This statute does not apply to USYTA because it is a transporter, and transporters are not included on the list of enumerated persons to whom the statute imposes affirmative duty. Moreover, none of the allegations at issue in this action concern allegations of abuse which took place in Indian country.[11] D.J.'s inclusion of and reliance on this statute reflects how desperate his claims are, as stretches so far to allege duties which have no other source in common law or statute. The application of this statute is so far reaching that is borders on a frivolous claim.

D.J. also alleges that USYTA breached its duty in "Lying [to] and deceiving authorities and regulatory agencies" and "Obstructing investigations." (Doc. #1: ¶ 139, l, m). These allegations are not indicative of a breach of duty but are merely conclusory allegations that lack factual basis. D.J. pleads no allegations which describe how or what USYTA lied about, in what manner USYTA was deceitful, how or which investigations USYTA obstructed, or to which authorities and regulatory agencies USYTA supposedly lied to, deceived, and obstructed. Where these

---

[11] Indian country is defined as land within the limits of Indian reservations under the jurisdiction of the United States Government, all dependent Indian communities within the borders of the United States, and all Indian allotments for which the Indian titles have no been extinguished. 18 U.S.C.A. § 1151.

allegations are also conclusively alleged without any factual basis whatsoever and are defamatory in nature, they come dangerously close to being libel.

USYTA undertook a limited, contractual duty to D.J.'s parents to transport him to Jamaica, and D.J. does not allege that USYTA breached that duty in any capacity. All of D.J.'s allegations of negligence are based on *other* duties, not rooted in law or contract, and all of his breaches are unsubstantiated by any allegation of fact. For those reasons, D.J. fails to state a valid cause of action for negligence against USYTA, and this claim must be dismissed.

### b. D.J. Has No Claim For Negligent Infliction Of Emotional Distress.

D.J.'s claim for negligent infliction of emotional distress fails as a matter of law as D.J. was not a bystander to the alleged negligence that caused an injury, but was the actual victim of alleged negligence. In other words, negligent infliction of emotional distress is a remedy for those who witness a person being negligently injured. "The elements of negligent infliction of emotional distress are: "(1) the plaintiff must suffer a discernable physical injury; (2) the physical injury must be caused by the psychological trauma; (3) **the plaintiff must be involved in the event causing the negligent injury to another**; and (4) the plaintiff must have a close personal relationship to the directly injured person." *LeGrande v. Emmanuel*, 889 So.2d 991, 995 (Fla. 3d DCA 2004) (citing *Zell v. Meek*, 665 So.2d 1048, 1052 (Fla. 1995)).

D.J. alleges that "USYTA knew or should have known that there was a high probability that its conduct in transporting minor Plaintiff to ALA would cause physical injury, severe emotional distress, mental anguish, pain and suffering to minor **D.J.**" (Doc. #1: ¶196). As such, D.J. maintains **he** sustained "severe bodily harm, emotional distress, and physical manifestations of emotional distress *Id*. At ¶200. D.J. cannot satisfy the elements of negligent infliction of emotional distress because he was not involved in the event causing the negligent injury to another to whom he had a close personal relation. The injured party contained in L.S's

Complaint is himself, not another person he had close relationship with. Therefore, D.J. has failed to state a valid cause of action for NIED against USYTA.

### c. D.J.'s Allegations Fail To Address The Requisite Elements To Support A Cause Of Action For Vicarious Liability.

The next count against USYTA is for vicarious liability of its employees and/or agents. As can be seen from the allegations in this count, the crux of the vicarious liability contentions is that the alleged employees and/or agents made negligent a/or fraudulent misrepresentations to LS and his parents in the course and scope of their agency. (Doc. #1: ¶241). Furthermore, D.J. also contends that USYTA to implement policies and procedures to stop these negligent and/or fraudulent misrepresentation. *Id*.

"[A]n employer is vicariously liable for an employee's tortious conduct where the conduct occurs within the scope of the employment." *Fields v. Devereux Found., Inc.*, 244 So. 3d 1193, 1196 (Fla. Dist. Ct. App. 2018)(citation omitted). In seeking to hold an employer liable for an employee's intentional torts, "a plaintiff's mere showing that an employee was on duty at the time he assailed someone is not sufficient to establish that the conduct occurred within the scope of employment." *Id*. (citation omitted).

A valid cause of action must sufficiently allege that (1) that the employee's conduct is 'of the kind he was employed to perform; (2) the conduct must occur substantially within the time and space limits authorized or required by the work to be performed; and (3) the tortious conduct must be activated at least in part by a purpose to serve the employer such that the conduct is undertaken with the intention of furthering the employer's interests. *Id*. (citations and quotations omitted).

D.J.'s claim for vicarious liability is a continuation of his vague and conclusory allegations against USYTA. Nowhere in the Complaint does D.J. identify any tortious conduct of a USYTA employee or employees. At Paragraph 189, he alleges that some unidentified "agents, apparent agents, employees and/or independent contractors" engaged in *negligent conduct* including *misleading* and *misrepresenting* material facts. Assuming these are the same negligent and/or misrepresentation claims

previously asserted against USYTA, as stated before, USYTA's agents statements are protected by the First Amendment because they were opinions and thus there is no cognizable cause of action for negligent or fraudulent misrepresentation against USYTA.

D.J. continues to allege that USYTA "knew, had reason to know, or was otherwise on notice of the unlawful conduct" of its employees, "failed to take reasonable steps and… implement reasonable safeguards to avoid harmful or unlawful conduct in the future," and that USYTA's knowing "acquiescence and silence with respect to the known, or reasonably knowable, activities of" its employees "constituted a course of conduct through which acts of child abuse… were condoned, approved, and effectively authorized." (Doc. #1: ¶190-191). But, D.J. still fails to describe any USYTA agent/actor/employee in particular, how or why USYTA knew or should have known that any child abuse would occur, or any specific tortious conduct committed by a USYTA employee which was committed in furtherance of USYTA's interests. These allegations are conclusory statements posed as facts which reiterate the elements for a vicarious liability claim.

Finally, the failure to have policies and procedures is not a vicarious liability claim, but an institutional negligence claim. Thus, these allegations are irrelevant.

D.J.'s entire vicarious liability claim is essentially a duplication of his fraud and negligence claims just in a slightly different format. With no stacks to support his claims, D.J. also bootstraps the alleged abuse those at ALA asserting they were agents of USYTA. For these reasons, and because D.J.'s allegations fail to plead the essential elements for vicarious liability, D.J. fails to state a valid cause of action for vicarious liability, and this claim must be dismissed.

## CONCLUSION

In its entirety, D.J.'s Complaint fails to plead sufficient allegations of material facts which tend to support any one of his ten claims against USYTA. Where his Complaint essentially asserts duplicative claims against USYTA and Co-Defendants, D.J. fails to allege even the most minimal of facts against USYTA. One of the most important and apparent deficiencies in his allegation against USYTA is the fact that

D.J. never substantively alleges how or why USYTA knew or should have known that ALA was an allegedly abusive or harmful program.

Generally, where allegations of fraud must be made with particularity, D.J. relies primarily on meager statements of opinion which do not amount to the concealment or misrepresentation of material facts and which are protected as free speech under the First Amendment.

In regard to his three conspiracy claims, D.J. haphazardly alleges that USYTA engaged in various business relationships with Co-Defendants, but he fails to sufficiently allege that these relationships even exist. D.J. fails to allege facts to show the existence of any contracts, partnerships, or ventures between USYTA and Co-Defendants.

Next, D.J. alleges that he is a victim of human trafficking for which USYTA is liable under a theory of third-party beneficiary liability. While his claims appear to concern tortious child abuse more than federal labor trafficking, D.J. fails to allege any individual allegations against USYTA whatsoever. Where his requisite U.S.C. § 1589(b) claim fails to state a valid cause of action, D.J. claims under § 1595, and § 2255 also fail to state a valid cause of action.

In addition, D.J.'s three negligence claims for negligence generally, NIED, and vicarious liability fail to allege any legitimate duties owed by USYTA at all material times and otherwise fail for the reasons set forth in the preceding claims.

D.J.'s Complaint also omits an important factor- the existence of a contract between USYTA and D.J.'s parents. This contract is essential in understanding USYTA's limited scope of care, custody, and control of D.J. and its defined termination of duties. To disregard the existence of this contract or its terms would be to disregard foundational material facts particular to USYTA in the grand scheme of this action.

Case No. 9:24-CV-81374-ROSENBERG/REINHART

**WHEREFORE**, Defendants, UNITED SECURE YOUTH TRANPORT AGENCY, LLC and PAUL LUKE, respectfully requests that the foregoing Motion be granted by this Court and that the Court enter an order dismissing Counts III, VI, VIII, IX, XII, XV, XVIII, XXI, XXIII, and XVI of Plaintiff's, D.J., Complaint *with prejudice* and for any other relief this Court deems just and proper.

### REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), USYTA respectfully requests oral argument on the foregoing motion to dismiss. USYTA requests a hearing on the motion because oral argument would assist the Court in understanding why Plaintiff's allegations fail to state a claim. In addition, oral argument would assist the Court in understanding the arbitrary nature of the numerous duties alleged by D.J., promoting the efficient resolution of invalid claims. Undersigned counsel estimates that 30 minutes of oral argument will be sufficient.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of January, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court of Miami-Dade County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to the parties registered with the e- Filing Portal system.

Dated January 31, 2025

Signed: */s/ Christopher R. Reinkall*
CHRISTOPHER R. REINKALL
FBN: 1017083
ANTONIA M. ODEH
FBN: 1045730
Counsel for Defendants, UNITED SECURE YOUTH TRANSPORT AGENCY, LLC and PAUL LUKE

Cole, Scott, & Kissane, P.A.
9150 South Dadeland Boulevard, Suite 1400
Miami, Florida 33256
Tel: (786) 268-6413
Fax: (305) 373-2294
Christopher.Reinkall@csklegal.com
Antonia.Odeh@csklegal.com
Lorraine.Mata@csklegal.com
Yvonne.Calle@csklegal.com